UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LISA MARTINEZ,                         )          NO. EDCV 07-789 AGR
                                       )
         Plaintiff,                    )
                                       )
     v.                                )
                                       )          MEMORANDUM OPINION AND
                                       )          ORDER
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
         Defendant.                    )
_____)

     Lisa Martinez filed this action on July 10, 2007.  Pursuant to 28 U.S.C. §
636(c), the parties filed Consents to proceed before the Magistrate Judge on July
24 and 27, 2007.  On March 13, 2008, the parties filed a Joint Stipulation ("JS")
that addressed the disputed issues.  The Court has taken the matter under
submission without oral argument.

     Having reviewed the entire file, the Court reverses and remands for further
proceedings consistent with this opinion.

///

///

///

///

**I.**

## PROCEDURAL BACKGROUND

On January 26, 2005, Martinez filed an application for disability insurance benefits and supplemental security income benefits.  A.R. 10.  The application was denied initially and on reconsideration.  A.R. 47-48.  Martinez requested a hearing.  A.R. 62.  The Administrative Law Judge ("ALJ") conducted a hearing on November 14, 2006, at which Martinez, a medical expert, and a vocational expert testified.  A.R. 227-247.  On December 13, 2006, the ALJ issued a decision denying benefits.  A.R. 7-15.  On December 29, 2006, Martinez filed a request for review of the ALJ's decision.  A.R. 6.  On April 30, 2007, the Appeals Council denied the request for review.  A.R. 3-5.  This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

2

**III.**

**DISCUSSION**

**A.    Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that Martinez had the following severe impairments: "depressive disorder, NOS, secondary to polysubstance abuse." A.R. 14. Martinez has the residual functional capacity to "perform simple repetitive tasks with no general public contact" and "to perform a significant range of work at all exertional levels." *Id.* at 14-15.  The ALJ found that Martinez cannot perform any of her past relevant work. A.R. 14.  However, "there are a significant number of jobs in the national economy that she could perform." A.R. 15.  Examples include work as a packer, laundry worker, assembly and house cleaner. *Id.*

**C.    Treating Clinician**

Martinez first argues that the ALJ did not properly consider the opinion of Ms. Johnson.  Martinez characterizes Ms. Johnson as a therapist.  JS 4.

The record does not contain any indication that Ms. Johnson is a therapist. Ms. Johnson is referred to as a "benefits specialist" who provides "advice about social security benefits application." A.R. 201.  Ms. Johnson  appears to be a behavioral health specialist who works with the "MHS Benefits Unit." A.R. 178, 183, 185, 189-190, 193-195, 197.  On January 18, 2005, Ms. Johnson started assisting Martinez with her application for benefits. A.R. 201.  Ms. Johnson's

3

notes reflect administration of Martinez' claim for social security benefits, including transportation to an attorney's office and completion of paperwork/applications.  A.R. 183, 185, 189-190, 194-195, 197, 202.  Ms. Johnson wrote that she reminded Martinez that "this staff is not a therapist" and encouraged her to see a therapist.  A.R. 197.  Accordingly, there is no evidence that Ms. Johnson is a treating therapist.[1]  "We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."  20 C.F.R. § 404.1502; *Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003).

On the other hand, Ms. Johnson's report was also signed by Dr. Adeyamo, who indicated that she cannot cope with the rigors of regular or part-time employment.  A.R. 180.  There are medical records from Dr. Adeyamo.  *See* A.R. 181, 184, 190-192, 198-203, 208-209.  The records indicate that Martinez "sometimes feels depressed" (A.R. 181) and has "mild depressive symptoms" (A.R. 184).  *See also* A.R. 190, 191, 198.  Martinez was alert but "tearful at times while narrating her social stressors."[2]  A.R. 184, 199.  "Thought process was logical, speech clear & goal oriented."  A.R. 184.

The ALJ's sole reference to Dr. Adeyamo's records occurred in support of the ALJ's conclusion that "claimant has offered little objective evidence of a

---

[1]   The Court notes that, even assuming Ms. Johnson was a treating therapist, it is undisputed that she was not an acceptable source of medical evidence of an impairment.  JS 4; 20 C.F.R. § 404.1513(a), (e).  Contrary to Martinez' argument, however, an ALJ may properly discount testimony from an unacceptable medical source without satisfying the legal standards applicable to a treating physician.  *See Bunnell v. Sullivan*, 912 F.2d 1149, 1152-53 (9th Cir. 1990) ("there is no requirement that the Secretary accept or specifically refute such evidence" from a chiropractor), *rev'd on other grounds*, 947 F.2d 341, 348 (9th Cir. 1991).

[2]   The social stressors are identified as "financial problems, SSI denial, grandmother is sick, father sometimes mad at her b/c he has to help her, unable to pursue her dream to work as a makeup artist."  A.R. 184.

1   medically determinable impairment other than drug and alcohol abuse."[3]  A.R. 11.

2   In that context, the ALJ referred to Martinez's history of methamphetamine use

3   and drinking.  *Id.*

4          Although the ALJ referred to these records, the Commissioner does not

5   dispute that the ALJ did not discuss Dr. Adeyamo's opinion that Martinez is

6   unable to work and did not set forth any reason for discounting that opinion.  An

7   opinion of a treating physician is given more weight than the opinion of non-

8   treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When, as

9   here, a treating physician's opinion is contradicted by another doctor, "the ALJ

10  may not reject this opinion without providing specific and legitimate reasons

11  supported by substantial evidence in the record.  This can be done by setting out

12  a detailed and thorough summary of the facts and conflicting clinical evidence,

13  stating his interpretation thereof, and making findings."  *Id.* at 632 (citations and

14  internal quotation marks omitted).

15         The Commissioner argues that any error is harmless based on the

16  evidence of record.  However, a district court is constrained to review the reasons

17  that the ALJ asserts for his or her decision.  *Connett v. Barnhart*, 340 F.3d 871,

18  874 (9th Cir. 2003).  A district court may not affirm the decision based on reasons

19  or grounds that the Commissioner did not invoke in making its decision.  *Stout v.*

20  *Commissioner*, 454 F.3d 1050, 1054 (9th Cir. 2006).  Here, the ALJ did not set

21  forth reasons for discounting Dr. Adeyamo's opinion.  Accordingly, the matter

22  must be remanded on this issue.

23

24  _____

25         [3]  "An individual shall not be considered to be disabled . . . if alcoholism or
    drug addiction would . . . be a contributing factor material to the Commissioner's
26  determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Martinez
    would bear the burden of proof to establish that drugs and/or alcohol were not a
    contributing factor to disability.  *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir.
27  2007), *cert. denied*, 128 S. Ct. 1068 (2008).  However, in *Parra*, the ALJ
    conducted a drug abuse and alcoholism analysis and made findings.  *Id.* (citing
28  20 C.F.R. § 404.1535(b)).

### D.    Plaintiff's GAF Scores

Martinez contends that the ALJ failed to properly consider Martinez's

Global Assessment of Functioning ("GAF")[4] scores.  JS 8-9.  In particular, in May

2005, Martinez was hospitalized at Riverside County Regional Medical Center, at

which time she was assessed a GAF score of 50.[5]  A.R. 108.  Then, in April 27,

2005, Dr. Estelle T. Goldstein, the consultative psychiatric examiner, reported

that Martinez had a GAF rating of 55.[6]  A.R. 170.  In the Narrative Report by Dr.

Abeyemo (and Ms. Johnson), Martinez was assessed a GAF score of 65/60.[7]

A.R. 180.

The ALJ did not err by failing to expressly discuss Martinez's various GAF

scores because they are not determinative of mental disability for social security

claim purposes.  *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF

scale] does not have a direct correlation to the severity requirements in our

mental disorder listings.").  The GAF scale is used by clinicians to report a

patient's overall level of functioning and to make treatment decisions.  *See*

DSM-IV at 32.  The ALJ's failure to reference the GAF scores, standing alone,

does not make his findings inaccurate.  *See Howard v. Comm'r of Soc. Sec.*, 276

---

[4]  A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 2000) (hereinafter "DSM IV").

[5]  A GAF of 41-50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM IV at 34.

[6]  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*

[7]  A GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationship)."  *Id.*

1  F.3d 235, 241 (6th Cir. 2002) (rejecting the claimant's argument that the ALJ

2  improperly failed to consider her GAF score from her treating physicians in

3  assessing her residual functional capacity, reasoning that "[w]hile a GAF score

4  may be of considerable help to the ALJ in formulating the RFC, it is not essential

5  to the RFC's accuracy.").  Indeed, Dr. Wells specifically acknowledged Martinez's

6  GAF scores but nevertheless concluded that Martinez had the residual functional

7  capacity to perform nonpublic, simple, repetitive tasks.  A.R. 231, 233.

8  Accordingly, the ALJ was not required to expressly discuss Martinez's GAF

9  scores.  *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ

10 need not discuss all evidence but must explain why "significant probative

11 evidence has been rejected") (citation and internal quotation marks omitted).

### E.   Consultative Psychiatric Examiner

13        After conducting a psychiatric examination, Dr. Goldstein diagnosed

14 Martinez with "panic disorder grafted onto likely possible Bipolar Disorder, by

15 history."  A.R. 170.  She noted that Martinez's condition was likely to improve with

16 active treatment.  A.R. 171.  Dr. Goldstein concluded that Martinez had the

17 following limitations:  she was "able to understand, remember, and carry out

18 simple one or two-step job instructions"; she was "able to do detailed and

19 complex instructions"; her ability to relate and interact with supervisors, co-

20 workers, and the public was mildly limited; her ability to maintain concentration,

21 attention, persistence, and pace was moderately limited; her ability to associate

22 with day-to-day work activity was mildly limited; her ability to accept instructions

23 from supervisors was moderately limited; her ability to maintain regular

24 attendance in the workplace was mildly limited; and her ability to perform work

25 activities without special or additional supervision was moderately limited.  *Id.*

26 After reviewing Martinez's record, Dr. Wells agreed with Dr. Goldstein's

27 assessments and determined that Martinez could perform nonpublic, simple,

28 repetitive tasks.  A.R. 233.  In determining Martinez's residual functional capacity,

1   the ALJ relied on, *inter alia*, the assessments of Dr. Goldstein and Dr. Wells.

2   A.R. 12-13.

3       Martinez contends that the ALJ improperly considered the opinion of Dr.

4   Goldstein.  JS 11-12.  Specifically, Martinez argues that a "moderate" limitation in

5   the ability to accept instructions from supervisors, combined with a "moderate"

6   limitation in the ability to perform work activities without special or additional

7   supervision "virtually cancel the ability to work."[8]  JS 12.  Martinez's claim rests on

8   a misinterpretation of Dr. Goldstein's opinion.

9       Martinez provides no support for her argument that the two aforementioned

10   "moderate" limitations suggest that she is disabled.  Rather, the record indicates

11   otherwise.  Dr. Goldstein never expressly stated that Martinez was unable work.

12   Moreover, Dr. Wells characterized Dr. Goldstein's opinion as finding that Martinez

13   was limited to nonpublic, simple, repetitive tasks.  A.R. 233.  Based on this

14   residual functional capacity, along with Martinez's vocational factors of age,

15   education, and work experience, the VE identified several jobs that Martinez was

16   capable of performing.  A.R. 13-14, 246-47.  The ALJ properly considered Dr.

17   Goldstein's opinion.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26

27       [8]  Martinez again contends that the ALJ failed to discuss the GAF score
assigned by Dr. Goldstein.  JS 11.  For the reasons discussed above (*supra* Part
28   III.D), the ALJ did not err in failing to expressly discuss the GAF score.

8

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for consideration of the treating physician's opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 18, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

9